THE COUNTY OF JACKSON, PLAINTIFF IN ERROR, VS. LAURA THORNTON, DEFENDANT IN ERROR.

TAXATION—ILLEGALITY OF ASSESSMENTS—SECTION 1542, REVISED STATUTES CONSTRUED.

1. The assessments for which a party has a remedy by petitition, under the provisions of section 1542, Revised Statutes, are assessments wherein, independently of the exercise of a discretion as to value, there appears error in matter of law. The remedy given by this statute does not extend to individual assessments made by a tax assessor where the alleged illegality is confined entirely to, or results solely in, an excessive valuation of the property, whether such excessive valuation resulted from an erroneous exercise of judgment as to value, or from the adoption of an erroneous principle in placing values. The statutes providing for a review and equalization of values by equalizing boards, before which taxpayers can be heard as to the reduction of values made by assessing officers, furnish the proper remedy where over-valuation is the sole complaint. If the taxpayer can obtain from such equalizing board all the relief to which he is entitled—that is the reduction of the values assessed on his property to the standard provided by the statutes—he must go there for relief, and not by petition to the Circuit Judge.

2. The remedy provided by section 1542, Revised Statutes, is not co-extensive with that afforded by a court of equity to prevent the collection of taxes. It is confined entirely to illegality of assessments, and where this is found to exist in the statutory proceeding, the judge cannot adjust values. he can only adjudge the assessment to be not lawfully made. The remedy afforded by the statute reaches only illegalities in matters of law connected with the assessment.

County of Jackson v. Thornton—Statement of Case.

3. Where taxpayers do not avail themselves of the privilege afforded by law of being heard before the equalizing board as to valuations of their property, they have no ground for alleging in a proceeding under Section 1542, Revised Statutes, that the mode by which the assessor arrived at his valuation renders the assessment illegal.

Writ of error to the Circuit Court for Jackson County.

### STATEMENT.

On May 7th, 1894, the defendant in error filed her petition in the Circuit Court of Jackson county, alleging as follows: "That she was the owner of certain real estate, therein particularly described, lying in Jackson county, Florida; that these lands were unimproved pine lands, and were assessed for taxes for the year 1893, by the tax assessor of said county at a valuation of three dollars per acre, which was much more than the real value of the lands; that the collector of revenue for said county theatened to sell said lands on the seventh day of May, 1894, for the payment of said taxes, and was at the filing of said petition advertising the lands for sale on said day for that purpose; that the assessment of said lands was not a fair and equal assessment, but was made in pursuance of a prearranged plan of the tax assessor whereby in making assessments of property in said county for taxation he assessed lands of the description aforesaid, which comprised a very large part of the area of the county of Jackson, at an uniform valuation of one dollar per acre for the same, if given in to the assessor of said county for assessment by the owner thereof, said assessment being made without regard to the true value, or to any difference which might exist in the values of the dif-

ferent tracts comprising such lands, and assessed the same uniformly at a greater valuation—usually of three dollars per acre—if they were not given in for assessment and taxation by the owner, without regard to the real value of such property; that this difference in the amount of the assessment is based, not in any difference in the value of the lands assessed, but absolutely and exclusively upon the action of the owner in giving in, or failing to give in, his property for assessment; that the assessment of petitioner's property was made in pursuance of said plan, and that the same is unjust and unequal, without uniformity, fraudulent, illegal and void."

The prayer of said petition was that the court would grant an order declaring the said assessment illegal and not lawfully made, and prayed further for process of the court to be directed to the county of Jackson requiring it to answer the petition.

The defendant county filed its demurrer to the petition upon the grounds: (1) That the petition does not set forth facts sufficient to entitle the petitioner to the relief prayed; (2) that the facts alleged merely show an over valuation of the lands, and not an illegal or unlawful assessment; (3) that the petitioner's remedy was to appear before the board of county commissioners at its July and August meeting, 1893, and having failed to do so the petition would not lie; (4) that the petition shows that the property was to have been sold on the seventh day of May 1894, which period has elapsed; (5) that the assessment could not be declared unlawful in this proceeding after a sale had been had upon the assessment.

The county filed an answer to which it is stated a demurrer was sustained by the court though we find no demurrer in the abstract. The court overruled the demur-

---

County of Jackson v. Thornton.—Opinion of Court.

---

rer to the petition and declared the assessment of the lands described in the petition for the year 1893 to have been unlawfully made. The county sued out a writ of error and assigns as error among others, the decision, of the court overruling the demurrer to the petition.

The other facts in the case are stated in the opinion of the court.

*Francis B. & John H. Carter,* for Plaintiff in Error.

*Mallory & Maxwell,* for Defendant in Error.

PER CURIAM.

Mr. Justice CARTER being disqualified took no part in the decision of this cause. The Chief-Justice and Mr. Justice MABRY referred the case to Commissioner Hocker for examination, who reports in favor of reversing the judgment. After due consideration the court is of the opinion that the judgment should be reversed for reasons stated in the following opinion.

The petition filed in this case was under section 1542, Revised Statutes, providing that "in all cases where assessments are made against any person, body politic or corporate, and payment of the same shall be refused upon allegation of the illegality of such assessment, such person, body corporate or politic, may apply to the judge of the Circuit Court by petition setting forth the alleged illegality, and present the same together with the evidence to sustain it, and the judge shall decide upon the same, and if found to be illegal shall declare the assessment not lawfully made."

. The assessment complained of was made for the year 1893, under the act of 1891, Chapter 4010. By the twenty-third section of this act the county assessor, with the assistants provided for in the act, was required to ascertain by personal inspection, when not already sufficiently acquainted therewith, the value of the lands and assess them at their full cash value. The twenty-eighth section provides that the assessor shall complete the assessment rolls on or before the first Monday of July in every year, on which day he shall meet with the board of county commissioners at the circuit clerk's office, for the purpose of reviewing and equalizing the assessment, and the session if the board may continue in session from day to day for one week, or as long as may be necessary. Under the twenty-ninth section the board of county commissioners are given power to equalize the assemment of real estate and for that purpose may raise or lower the values fixed by the assessor.

It was held in Shear v. County Commissioners of Columbia County, 14 Fla. 146, that the statute giving a remedy for an illegal assessment embraces those assessments only in which there is error in matters of law, and that the judgment of the county commissioners upon a complaint for the abatement of a tax is a judicial act in which the exercise of their discretion in fixing values can not be revised by any other tribunal. It is in the opinion, "illegal assessmcnts—that is, assessments wherein, independent of the exercise of a discretion as to value, there appears error in matter of law, are the assessments for which a party has a remedy by petition" under the statute. Under this ruling it was again announced in City of Tampa v. Mugge, 40 Fla. 326, 24 South. Rep. 489, that the remedy provided by the statute does not extend to the correction

of a mere erroneous exercise of official judgment on  the part of tax officers as to the valuation of property.  It is evident, as was said in one case, that the statute does not undertake to give a remedy co-extensive with the powers of a court of equity to prevent the collection of taxes.  It is confined entirely to "illegality" of assessments,  and when this is found to exist the court must "declare  the assessment not lawfully made."  In case of illegality resulting entirely in an overvaluation of property, the court would have no power under  the  remedy given  by  the statute to adjust values, but would be compelled to  declare the assessment entirely  unlawful, and  the  party might escape taxation entirely, though his property  be liable thereto based on its  cash  valuation.  There  are other features of the statute indicating that it should not have a very broad scope.  It does not seem to  contemplate any power in the circuit judge to suspend  action under the tax proceedings pending the hearing under the petition, nor is there anything said in the statute as  to who shall be made parties defendant.  It is a  remedy allowed by the State in favor of persons and bodies  corporate to have annulled an assessment of property in  proceedings to collect revenue for governmental purposes on account of illegality in matters of law connected with the assessment.  This court has acted under and enforced the statute in cases where petitions have been  filed  against county commissioners and municipal bodies.  We are  of opinion that the remedy given by the statute does not  extend to individual assessments made  by a  county  tax assessor where the alleged illegality is confined entirely to, or results solely in, an excessive valuation of the property, whether it be in an erroneous exercise of  judgment as to value, or the adoption of an erroneous principle in

placing values. The assessment statute in force when section 1542 Revised Statutes was enacted, as well as subsequent statutes on the subject of assessments, provided for a review and equalization of values by equalizing boards before which taxpayers could be heard in the reduction of values made by assessing officers. The powers conferred upon the equalizing boards may not be sufficient to adequately investigate questions of fraud, or some other matters connected with the assessors' work in reference to the assessment, but such boards clearly have the power to reduce values in accordance with the directions and spirit of the statutes. If the taxpayer can obtain from the equalizing board all the relief to which he is entitled— that is the reduction of the values of his property to the standard provided by the statute—he should be required to go there for relief. In Town of Kissimmee City v. Cannon, 26 Fla. 3, 7 South. Rep. 523, a ground of illegality insisted on was that the assessment was never legally reviewed by the town council. It was contended that the council in advance of any tax roll before them conferred with the assessor and raised the values of lands in an illegal way by agreeing what values he should place upon the property, and also that it was improper and illegal for the assessor to change and raise his valuations at the instance of members of the council before making up his roll. The opinion states, page 8, "the final roll, however made up, was that to which the taxpayers were to look, and the statute gave them the privilege to be heard by the council if they felt aggrieved by the valuation of their property on that roll. The complainant did not avail himself of this privilege, and we think he has no valid ground for saying now that the mode by which the assessor came to arrive at his valuations in the end renders

the assessment illegal." The facts of that case, as indicated in other portions of the opinion, showed that the council did not officially confer with the assessor and direct what values should be placed on the property, but individual members were consulted by the assessor as to values of lands and that he did not surrender his judgment and discretion as to such matters. The headnote in the case may not authorize the conclusion that the decision was placed upon the principle announced in the quotation made, but it indicates the then judicial view, that where parties do not avail themselves of the privilege of being heard before the equalizing board as to valuations, they have no ground for saying that the mode by which the assessor came to arrive at his valuations in the end renders the assessment illegal. After due reflection we are of the opinion that the construction we place upon the statute in regard to alleged illegality confined entirely to, or resulting solely in, an excessive valuation of property, is correct. The only case in this court that might be thought to conflict with it is City of Tampa v. Kaunitz, 39 Fla. 683, 23 South. Rep. 416. We there held that if tax officers intentionally omit taxable property from the assessment rolls for an improper purposes, thereby unequally and inequitably adjusting the burdens of taxation, the entire assessment will be illegal and void. If, however, the omission arises in consequence of a *bona fide* belief on their part that the omitted property is exempt from taxation, or results from inadvertence or negligence, without any intent to impose additional or unequal burdens on other taxpayers, the assessment will be valid. It will be observed that the principle announced has no reference to valuations of property placed on the roll by the assessor, but to omissions therefrom and in cases

where it is intentionally done for an improper purpose and results in inequality and inequitably as to burdens of taxation the entire roll will be set aside. In such a case the equalizing board can afford no relief, as its powers are confined to a review and equalization of the assessment returned by the assessor.

The ground of illegality alleged in the petition before us, in substance, is that petitioner's real estate, consisting of unimproved pine lands, was assessed by the assessor at three dollars per acre, which was much more than their real value, and that they were assessed in pursuance of a prearranged plan on the part of the assessor that in asesssing lands in the county of the character mentioned, which comprised a large part of the area of the county, he placed thereon an uniform valuation of one dollar per acre, if given in for taxation by the owner, and when not given in by the owner, the same were uniformly assessed at a greater valuation, usually at three dollars per acre, and that the assessment was made without regard to the true value of the lands or any of them, but exclusively upon the action of the owner in giving in, or failing to give in, his property for assessment; and it is alleged that said assessment was unjust, unequal, without uniformity, fraudulent, illegal and void. It is not alleged that the assessor adopted the plan or assessed petitioner's lands with a fraudulent intent, but his plan or mode of procedure is stated, and it is alleged to be fraudulent. We have no doubt that the method of assessment, as shown by the petition, is unauthorized and could not be sustained before the proper forum as a legal assessment under the statutes. It proceeded upon an entirely erroneous principle for the ascertainment of value, and in disregard of the directions of the statute. Its illegality,

however, is confined entirely to, or results solely in, an excessive valuation of the property, and can not in our judgment be reached by the statutory remedy adopted.

The first ground of the demurrer should have been sustained by the court, and it was error to refuse to do so.

The judgment will be reversed with directions to sustain the demurrer to the petition, and for such further proceedings as may be consonant to law, and it is so ordered.